**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

United States District Court
Southern District of Texas
FILED

MAR 1 9 2021

Nathan Ochsner, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* [UNDER SEAL], | |
| Plaintiff, | Civil Action No.  **M - 21 - 0095** |
| vs. | **ORIGINAL COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT** |
| [UNDER SEAL], | **FILED UNDER SEAL** |
| Defendants. | **JURY TRIAL DEMANDED** |

United States District Court
Southern District of Texas
FILED

MAR 1 9 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

UNITED STATES OF AMERICA, *EX REL.*
JODY MCINTYRE and CASTINE
MCILHARGEY,

        Plaintiffs/Relators,

    vs.

ALBERTO MARTINEZ, ERIK HAGER,
JOANNA PENA, and EDUARDO PENA,

        Defendants.

Civil Action No. **M-21-0095**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### INTRODUCTION

1.    Plaintiffs and *qui tam* relators Jody McIntyre and Castine Mcilhargey (collectively "the relators"), individually and on behalf of the United States of America, bring this action to recover damages, penalties, and attorneys' fees for violations of the Federal False Claims Act ("FCA") committed by Alberto Martinez ("Martinez"), Erik Hager ("Hager"), Joanna Pena ("JPena"), and Eduardo Pena ("EPena") (collectively "the Defendants"). The Defendants have submitted or caused to be submitted multiple false claims to the Small Business Administration ("SBA"), a federal agency, in conjunction with applications for loans through the Paycheck Protection Program and the Economic Injury Disaster Loan Program. Unbeknownst to the SBA and in plain violation of federal law, the Defendants submitted claims certifying that their businesses were in operation during the year 2020 when their businesses were either non-operational or otherwise ineligible to apply for relief through the SBA's loan program. The false affirmations made in the applications include revenues earned, the number of those employed or contracted by the business, and physical addresses. With these false claims, the Defendants were then eligible and granted multiple loans through the SBA and participating financial institutions.

2. Defendants began submitting these false claims as early as April 2020 and have caused numerous false certifications and claims to be made to the SBA and participating financial institutions. The United States Government, in reliance upon the Defendants' misrepresentations, has suffered over $1,000,000 in damages.

3. Plaintiff and *qui tam* relators Jody McIntyre and Castine Mcilhargey now seek relief on behalf of the United States Government for these injuries herein and the imposition of statutory penalties and attorneys' fees for the Defendants' violations of the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended ("the FCA").

4. Relators bring this action based on their direct knowledge and on information and belief. The facts and allegations underlying this Complaint have not been publicly disclosed, as public disclosure is defined under 31 U.S.C. § 3730. The relators are an original source of facts alleged in this Complaint, as defined under 31 U.S.C. § 3730(e).

5. As required by the FCA, 31 U.S.C. § 3730(b)(2), the relators have provided to the Attorney General of the United States and the United States Attorney for the Southern District of Texas before the filing of this Complaint a disclosure statement of all material evidence and information related to the Complaint. This disclosure statement is supported by material evidence known to the relator at the time of this filing, establishing the existence of the Defendants' legal responsibility for those false claims. Because the statement includes attorney-client communications and work product of relator's attorneys and is submitted to the U.S. Attorney General and the U.S. Attorney in their capacity as potential co-counsel in the litigation, these disclosures are confidential.

## RELEVANT FEDERAL AND STATE LAW

6. The FCA provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty, stated in the statute as not less than $5,000 or more than $10,000 but adjusted for inflation, for each such claim submitted or paid, plus three times the amount of the damages sustained by the Government. Liability attaches both when a defendant knowingly presents, or

2

causes to be presented, a false claim for payment from the Government and when false records or statements are knowingly used, or caused to be used, for payment from the Government. The FCA allows any person having information regarding a false or fraudulent claim against the Government to bring an action for himself (as "relator") on behalf of the Government and to share in any recovery. The Complaint is filed under seal for 60 days (without service on the defendants during that period) to enable the Government: (a) to conduct an investigation without the defendants' knowledge, and (b) to determine whether to join the action.

7.      Based on this provision, *qui tam* plaintiffs and relators Jody McIntyre and Castine Mcilhargey seek through this action to recover damages, civil penalties, and attorneys' fees arising from the Defendants' submission, or activities that caused the submission of false and fraudulent claims, records, and statements to the United States Government to obtain funds from the SBA.

## CORNAVIRUS AID, RELIEF, AND ECONOMIC SECURITY (CARES) ACT

8.      The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects of the Covid-19 pandemic.

### The Paycheck Protection Program

9.      One avenue of relief through the CARES Act's was the authorized relief of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). On March 27, 2020, Congress authorized over $300 billion in additional PPP funding. The SBA, an agency of the United States, began administering PPP funding the following week on April 3, 2020.

10.      To obtain a PPP loan, a business is required to submit a PPP loan application (SBA Form 2483), signed by the business's authorized representative. The PPP loan application requires that the business, through its authorized representative, acknowledge the program rules and make certain affirmative certifications regarding its eligibility.

11.      The PPP loan application requires the authorized representative to certify, in good

faith, the Applicant's operating status by initialing on a line next to the statement:

> "The Applicant was in operation on February 15, 2020 and had employees for whom it
> paid salaries and payroll taxes or paid independent contractors, as reported on Form(s)
> 1099-MISC."

12.     The PPP loan application also requires the authorized representative to certify, in good faith, the accuracy of information and documents submitted:

> I further certify that the information provided in this application and the
> information provided in all supporting documents and forms is true and
> accurate in all material respects. I understand that knowingly making a
> false statement to obtain a guaranteed loan from SBA is punishable under
> the law, including under 18 USC 1001 and 3571 by imprisonment of not
> more than five years and/or a fine of up to $250,000; under 15 USC 645
> by imprisonment of not more than two years and/or a fine of not more than
> $5,000; and, if submitted to a federally insured institution, under 18 USC
> 1014 by imprisonment of not more than thirty years and/or a fine of not
> more than $1,000,000.

13.     In the application, the Applicant's authorized representative must also provide, among other things, the business's (a) average monthly payroll expenses; and (b) the number of employees. These figures are used to calculate the business's eligibility for money it may receive under the PPP. Additionally, a business applying for a PPP loan must provide documentation showing their payroll expenses.

14.     A participating lender must process a PPP loan application. If the participating financial institution approves a loan application, it funds the loan using its monies, which are 100% guaranteed by the SBA. Information from the application, including information about the borrower, the loan's total amount, and the listed number of employees, is transmitted by the lending financial institution to the SBA to process the loan. Participating financial institutions require the information provided in PPP loan applications to be truthful, including information about the business employees and payroll expenses. The business must use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities.

4

**The Economic Injury Disaster Loan Program**

15.     Through its Office of Disaster Assistance ("ODA"), the SBA provides financial assistance to businesses of all sizes, most private non-profit organizations, homeowners, and renters following a declared disaster. SBA also provides eligible small businesses necessary working capital to help overcome a declared disaster's economic injury. The Small Business Act authorizes the SBA's Economic Injury Disaster Loan ("EIDL") Program, making loans available to eligible small businesses located in a disaster area that suffered a substantial economic injury due to a disaster.

16.     On March 13, 2020, the President of the United States determined that the ongoing COVID-19 pandemic was of sufficient severity and magnitude to warrant an emergency determination. Accordingly, the SBA declared all states and territories eligible for EIDL assistance.

17.     To obtain an EIDL and an advance, a qualifying business must apply to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12 months preceding the disaster, and cost of goods sold in the 12 months preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period preceded January 31, 2020.

18.     The SBA relies upon the application's self-certifications to verify that the applicant is an eligible entity to receive the EIDL and EIDL Advance.

> "CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application, you [the applicant] certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future."

19.     In addition to the section where the applicant must affirm the truth and accuracy of the information, the applicant affirms this certification under the penalty of perjury and other applicable federal criminal statutes.

"WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator [of the SBA] in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to the SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions."

20.     EIDL applications are submitted directly to the SBA through the SBA COVID-19 web portal. If approved, the SBA relies upon the information provided by the application about employment, revenue, and cost of goods to calculate the loan's principal amount. In addition to submitting the application, the applicant may request up to $10,000 in an EIDL Cash Advance Grant. Both funds issued under an EIDL or an Advance are issued and funded directly by the SBA.

21.     Applicants can use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the Paycheck Protection Program, the applicant cannot use EIDL funds for the same purpose as the Paycheck Protection Program funds.

## PARTIES

22.     *Qui tam* plaintiff and relators, Jody Sean McIntyre and Castine Mcilhargey, are residents of Cameron County, Texas. The relators bring this action for violations of 31 U.S.C. §§ 3729, *et seq*. on behalf of himself, the United States Government pursuant to 31 U.S.C. § 3730(b)(1). The relators have personal knowledge of the fraudulent practices regarding the Defendants' claims submitted in their applications to the SBA.

23.     Defendant Alberto Martinez is a resident of Cameron County, Texas. Martinez operates Masters Towing & Recovery LLC.

24.     Defendant Erik Hager is a resident of Cameron County, Texas. Hager is a former managing member of A+ Pro Recovery and Towing LLC.

25.     Defendant Joanna Pena ("JPena") is a resident of Cameron County, Texas. JPena operates several companies: A-Pro Towing & Recovery LLC, Isla Towing LLC, and

International Protection, Inc.

26.     Defendant Eduardo Pena ("EPena") is a resident of Cameron County, Texas. EPena operates Pura Vida Custom Designs LLC and Bulls Eye Investigations International LLC.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this FCA action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

28.     This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by section 3729 occurred." Section 3732(a) also authorizes nationwide service of process. During the relevant period, Defendants resided and/or transacted business in the Southern District of Texas and many of the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

29.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in, reside in, and/or transact business in the Southern District of Texas and because many of the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

## BACKGROUND

### FALSE CLAIMS

**Erik Hager**

*A+ Pro Recovery and Towing LLC*

30.     Relators Jody McIntyre and Castine Mcilhargey are both Managing Members of A+ Pro Recovery and Towing LLC ("A+ Pro"). They oversee the company's day to day operations and worked directly with Defendant Hager. A+ Pro was formed on December 9, 2019, preceding the purchase of substantially all of the assets of A-Pro on December 24, 2019. It

therefore clearly had no operations before December of 2019.

31.     On or about April 1, 2020, Hager applied electronically for an EIDL from the SBA. In connection with that application, Hager affirmed, among other information, that A+ Pro Recovery and Towing LLC, in the twelve months before the disaster, had $242,675.00 in gross revenues. On or about June 10, 2020, the SBA approved A+ Pro's EIDL application for the amount of $114,400.00. Hager certified that all of the EIDL application information was true and correct to the best of his knowledge, and executed the closing documents to receive the funds from the approved EIDL.

32.     On or about June 16, 2020 EIDL funds totaling $114,300.00 were deposited into the A+ Pro's account at Texas Regional Bank, Boca Chica Branch Office in Brownsville, Texas. On June 17, funds totaling $114,300.00 were wired from A+ Pro's account to Hager's personal account at Texas Regional Bank. This transfer was done in three separate transactions, one for $300.00, one for $20,000.00, and one for $94,000.00.

**Eduardo Pena**

*Pura Vida Custom Designs LLC*

33.     EPena is the operator of Pura Vida Custom Designs LLC ("PuraVida"), formed on or about September 20, 2019 with a listed physical address with the Texas Secretary of State of 1515 Padre Blvd STE B, South Padre Island, TX 78597. PuraVida, however, does not operate from 1515 Padre Blvd and had no operations in the State of Texas in the year 2020. Additionally, EPena, the sole applicant and only Member of PuraVida, was under criminal indictment for a felony offense in the State of Texas, making him ineligible to receive a PPP loan.

34.     As described further below, beginning on a date unknown, but at least in or around March 2020 through in or around April 2020, EPena submitted or caused to be submitted, a fraudulent loan application to Radius Bank to obtain funds through the PPP program.

35.     On a date unknown, but at least in or around March 2020 through in or around April 2020, EPena applied for a PPP loan through Radius Bank, claiming PuraVida was a legal, operational company doing business in the State of Texas at 1515 Padre Blvd, South Padre

8

Island, TX 78597. On or about April 27, 2020, Radius Bank approved PPP funds for the amount of $40,238.00.

***Bulls Eye Investigations International, LLC***

36.     In addition to PuraVida, EPena operated Bulls Eye Investigations International LLC ("Bulls Eye"), a company registered at the 1515 Padre Blvd, until on or about May 1, 2019. Bulls Eye Investigations International LLC has not been an operating company since in or about May 2019. There are several suites at this property address. None of them were rented by or owned by EPena or Bulls Eye in the year 2020.

37.     Bulls Eye is a Texas entity formed on January 18, 2019. The physical business address listed with the Texas Secretary of State is 1515 Padre Blvd, South Padre Island, TX 78597. Formation documents also list EPena as the Manager and the Organizer of Bulls Eye, a Manager Managed LLC.

38.     As described further below, beginning on a date unknown, but around March 2020 through around July 2020, EPena submitted or caused to be submitted, a fraudulent loan application to the SBA to obtain funds through the EIDL program.

39.     In or around March 2020 through July 2020, EPena applied electronically for an EIDL from the SBA. In connection with the EIDL Application, EPena affirmed, among other information, that Bulls Eye was a legal, operational company doing business in the State of Texas with offices located at 1515 Padre Blvd., South Padre Island, TX 788597. On or about July 21, 2020, the SBA approved their EIDL in the amount of $150,000.00. EPena certified that all of the EIDL application information was true and correct to the best of his knowledge and executed the closing documents to receive the funds. On or about the same date, EIDL funds totaling $150,000.00 were deposited into an account controlled by Eduardo Pena.

**Joanna Pena**

***A-Pro Towing & Recovery, LLC***

40.     As mentioned before, A+ Pro purchased substantially all of the assets of A-Pro Towing & Recovery, LLC ("A-Pro") on December 24, 2019, including their tangible and

intangible assets associated with business operations. The sole Member of A-Pro is JPena. A-Pro was not operating at 1515 Padre Blvd, South Padre Island, TX 78597 for any portion of the year 2020. A-Pro was not an operating company and had no employees for the year 2020.

41.　　A+PRO is a Texas entity formed on or about 12/09/2019. The physical business address of A+PRO is 1515 Padre Blvd, South Padre Island, TX 78597. The principal office address listed with the Secretary of State for A-Pro is 2216 Padre Blvd Suite B-185, South Padre Island, TX 78597. The mailing address listed with the Secretary of State for A-Pro is 1515 Padre Blvd, South Padre Island, TX 78597, the same address as A+ Pro. A+ Pro has occupied this property for the entirety of 2020.

42.　　As described further below, evidence gathered in the investigation demonstrates that, in or around March 2020 through in or around May 2020, JPena submitted or caused to be submitted a fraudulent loan application to the SBA to obtain funds through the EIDL program, and a fraudulent loan application to Celtic Bank Corporation to obtain funds through the PPP program.

43.　　On a date unknown, but at least before May 2020, JPena applied electronically for an EIDL from the SBA. In connection with the EIDL Application, JPena affirmed, among other information, that A-Pro was a legal, operational company doing business in the State of Texas with offices located at 2216 Padre Blvd. On or about April 13, 2020, an EIDL Advance of $5,000.00 was approved by the SBA and accepted by JPena. On or about May 6, 2020, the SBA approved A-Pro's EIDL application in the amount of $150,000.00. JPena certified that all of the EIDL Application information was true and correct to the best of her knowledge and executed the closing documents to receive the loan's funds. The SBA wired funds to accounts under JPena's control.

44.　　On a date unknown, but at least before May 2020, JPena applied for a PPP loan from Celtic Bank Corporation. JPena used A-Pro's former address of 1515 Padre Blvd South Padre Island TX, 78597 to apply for a PPP loan. JPena claimed to employ fourteen people at this address. Celtic Bank Corporation approved a PPP loan, and deposited funds in the amount of

$103,250.00 to an account under JPena's control. A-Pro had no employees and was not located at this address. A-Pro was in fact Involuntarily Terminated by the Texas Secretary of State on or about April 15, 2020, and was not reinstated until May 4, 2020.

45.     An EIDL Advance of $5,000.00 was deposited into an account controlled by JPena, and on or about June 17, 2020, the SBA deposited EIDL funds totaling $150,000.00 into an account under JPena's control.

46.     Regarding the PPP application, on or about April 29, 2020, funds totaling $103,250.00 were deposited into an account JPena's control.

*Isla Towing, LLC*

47.     With A+Pro purchasing A-Pro's assets, A+Pro's obtained the exclusive right to use the name Isla Towing. A+Pro filed for and the Texas Secretary of State granted an assumed name certificate of Isla Towing on or about January 8, 2020. JPena was the sole Member of another Texas LLC named Isla Towing LLC ("Isla"). Isla was involuntarily terminated without judicial ascertainment by the Office of the Secretary of State on or about April 15, 2020. Isla was not operating at 1515 Padre Blvd, South Padre Island, TX 78597 for any portion of the year 2020 and had no employees during the same period.

48.     The principal office, place of business, and mailing address filed with the Secretary of State on or about December 31, 2019, by Isla is 1515 Padre Blvd, South Padre Island, TX 78597, the same address used by A+PRO. This address is the same address used by A+Pro, which has occupied this property for the entirety of 2020.

49.     As described further below, in or around March 2020 through June 2020, JPena submitted or caused to be submitted, a fraudulent loan application to the SBA to obtain funds through the EIDL program.

50.     In or around March 2020 through June 2020, JPena applied electronically for an EIDL from the SBA. In connection with the EIDL Application, JPena affirmed, among other information, that ISLA Towing, LLC was a legal, operational company doing business in the State of Texas with offices located at 1515 Padre Blvd, employing at least five employees. An

11

EIDL Advance of $5,000.00 was approved by the SBA and accepted by JPena. On or about June 1, 2020, the EIDL was approved in the amount of $150,000.00. JPena certified that all of the EIDL Application information was true and correct to the best of her knowledge and executed the closing documents to receive the funds.

***International Protection, Inc.***

51.     The company International Protection, Inc ("International"), formed on or about January 6, 2012, was operated by JPena (formerly Joanna Quintana) and operated from several addresses until ceasing operations sometime in 2019. International has not been an operating company since on or about May 1, 2019. International still has signage on the building located at 1515 Padre Blvd, Suite B, South Padre Island, TX 78597 but has not occupied that address since ceasing operations on or about May 1, 2019. International has listed an operational address of 114 E. Red Snapper, South Padre Island, TX 78597 but has had no affiliation with that residential address since on or about June 6, 2019. International has listed an operational address of 2216 Padre Blvd, S Padre Isle, TX 78597. This location is a mailbox store similar to a Post Office.

52.     International is a Texas entity formed on or about January 6, 2012. The company has used multiple addresses and currently lists its principal business address as 114 E. Red Snapper, South Padre Island, TX 78597 with the Texas Secretary of State. JPena is International's listed President and Director.

53.     As described further below, in or around March 2020 through June 2020, JPena submitted or caused to be submitted, multiple fraudulent loan applications to the SBA to obtain funds through the EIDL and PPP programs.

54.     In or around March 2020 through June 2020, JPena applied electronically for an EIDL from the SBA. In connection with the EIDL Application, JPena affirmed, among other information, International was a legal, operational company doing business in the State of Texas with offices located at 114 E. Red Snapper Street, South Padre Island, TX 788597. On or about April 13, 2020, the SBA approved EIDL funds for the amount of $10,000.00. On or about June

12

2, 2020, the SBA approved additional EIDL funds for $52,400.00. JPena certified that all of the EIDL Application information was true and correct to the best of her knowledge, and executed the closing documents to receive the funds.

55.     On a date unknown, but at least in or around March 2020 through in or around April 2020, JPena applied for a PPP loan through Celtic Bank Corporation, claiming International was a legal, operational company doing business in the State of Texas at 2216 Padre Blvd, S Padre Isle, TX 78597 with 24 employees. On or about April 28, 2020, Celtic Bank Corporation approved PPP funds for the amount of $147,370.00.

56.     On a date unknown, but at least in or around March 2020 through in or around May 2020, JPena applied for another PPP loan through Transportation Alliance Bank, Inc., claiming International was a legal, operational company doing business in the State of Texas at 1515 Padre Blvd, South Padre Island, TX 78597 with 23 employees. On or about May 1, 2020, Transportation Alliance Bank Inc. approved PPP funds for the amount of $144,000.00

57.     On or about April 13, 2020, the SBA deposited EIDL funds totaling $10,000.00 into an account controlled by JPena. On or about April 28, 2020, Celtic Bank Corporation deposited PPP funds totaling $147,370.00 into an account controlled by JPena.

58.     On or about May 1, 2020, Transporation Alliance Bank Inc. deposited PPP funds totaling $144,000.00 into an account controlled by JPena. On or about June 2, 2020, the SBA deposited EIDL funds totaling $52,400 were deposited into an account controlled by JPena.

**Alberto Martinez**

*Masters Towing & Recovery LLC*

59.     Masters is a company operated by Martinez formed on or about January 16, 2020, with a listed physical address with the Texas Secretary of State of 610 S Garcia ST., STE B, Port Isabel, TX 78578. Masters had no operations in the State of Texas in the year 2019. Masters applied for licensure on or about February 11, 2020, and the licensure did not become active until on or about May 18, 2020.

60.     On a date unknown, but at least in or around March 2020 through May 2020,

13

Martinez applied for PPP loan through Celtic Bank Corporation, claiming Masters was an operating company doing business in the State of Texas at 610 S. Garcia St, Port Isabel, TX 78578 employing 23 employees. On or about May 20, 2020, PPP funds were approved for the amount of $108,068.00.

61.     On a date unknown, but at least in or around March 2020 through May 2020, Martinez applied for a separate PPP loan through Celtic Bank Corporation on behalf of himself, a self-employed repair and maintenance entity, using the same address, 610 S. Garcia St, Port Isabel, TX 78578. On or about April 30, 2020, Celtic Bank Corporation approved PPP funds for the amount of $3,914.00.

## COUNT 1

### Violations of the Federal False Claims Act
### [31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B)]

62.     *Qui tam* plaintiff and relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 59 of this Complaint.

63.     This is a claim for treble damages and forfeitures under the FCA, 31 U.S.C. §§ 3729, *et seq.*, as amended.

64.     Through the acts described above, Defendants submitted and/or caused to be submitted to officers, employees, or agents of the United States Government false or fraudulent claims with grossly negligent or reckless disregard of facts and conditions that would indicate that said statements or records were inaccurate or inappropriate and false.

65.     Through the acts described above, Defendants made, used, or caused to be made or used, false records and statements to obtain government payment of false or fraudulent claims which would not have been paid if the truth were known. Defendants had knowledge of the falsity of the records or statements, or had grossly negligent or reckless disregard of facts and conditions that would indicate that said statements or records were inaccurate or inappropriate and false.

66.     Plaintiff, the United States Government, unaware of the falsity of these claims,

14

records, and/or statements made by Defendants, and in reliance on the accuracy thereof, granted funds to the Defendants.

67. By reason of defendants' false records, statements, claims, and omissions, the United States has been damaged in the amount of over one million dollars. For each bill that is tainted by the Defendants' illegal acts and scheme, the United States Government is entitled to treble damages and forfeitures as well as the per-claim penalty amount under the False Claims Act.

## COUNT 2

### False Claims Conspiracy

### [31 U.S.C. §§ 3729(a)(1)(C)]

68. *Qui tam* plaintiff and relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 59 of this Complaint.

69. This is a claim for treble damages and forfeitures under the FCA, 31 U.S.C. §§ 3729, *et seq.*, as amended.

70. Through the acts described above, Defendants entered one or more conspiracies among and between themselves and others to defraud the United States Government by getting false and fraudulent claims approved or paid. Defendants, moreover, took substantial steps in furtherance of those conspiracies by preparing false records and claims and submitting such documents to the Government via the SBA and participating lenders for payment or approval.

71. A known or intended result of Defendants' conspiracy was to induce the Government to disperse or secure loans for businesses that did not exist or were not in operation.

72. Plaintiff, the United States Government, unaware of the falsity of these claims, records, and/or statements made by Defendants, and in reliance of the accuracy thereof, approved and dispersed funds for business entities that did not exists or were otherwise ineligible to apply for relief funding.

73. By reasons of Defendants' conspiracies, and the acts taken in furtherance thereof, the United States Government has been damaged in a substantial amount. For each application

that is tainted by Defendants' illegal acts and conspiracy, the United States Government is entitled to treble damages and forfeitures as well as the per-claim penalty amount under the False Claims Act.

## PRAYER

74. **WHEREFORE,** *qui tam* plaintiff and relator prays for judgment against Defendants as follows:

75. That Defendants cease and desist from violating 31 U.S.C. §§ 3729, *et seq.*

76. That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions and the maximum civil penalty against each defendant for each violation of 31 U.S.C. § 3729, *et seq.*

77. That *qui tam* plaintiff and relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d).

78. That *qui tam* plaintiff and relator be awarded all costs and expenses of this action, including attorneys' fees and court costs; and

79. That the United States and *qui tam* plaintiff and relator receive all such other relief as the Court deems just and proper.

## JURY DEMAND

80. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, *qui tam* plaintiff and relator hereby demands trial by jury.

Dated: March 19, 2021

Respectfully submitted,

/s/ *Omar Ochoa*
Omar Ochoa
S.D. Tex. Bar No. 2081960
OMAR OCHOA LAW FIRM PC
121 N. 10th Street
McAllen, Texas 78543
Telephone: (956) 630-3266

Victor Rodriguez
S.D. Tex. Bar No. 562260
VICTOR RODRIGUEZ LAW FIRM PC
121 N. 10th Street
McAllen, Texas 78543
Telephone: (956) 630-3266

*Attorneys for Relators Jody McIntyre and Castine Mcilhargey*

17